**Electronically Filed**
**Intermediate Court of Appeals**
**30649**
**31-AUG-2011**
**08:42 AM**

NO. 30649

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

IN THE INTEREST OF A.S.

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-S NO. 08-11941)

SUMMARY DISPOSITION ORDER
(By:  Nakamura, Chief Judge, Fujise and Leonard, JJ.)

Appellant Father (**Father**) appeals from the Order Awarding Permanent Custody, filed on July 19, 2010, in the Family Court of the First Circuit (**Family Court**).[1]

On appeal, Father contends that:  (1) there was insufficient evidence to find that Father was unable and unwilling to provide a safe family home for his daughter, A.S., presently or within a reasonably foreseeable future, even with the assistance of a service plan; (2) the State of Hawai'i, Department of Human Services (**DHS**) failed to provide a specific written plan that took Father's level of cognitive functioning into account; (3) the Family Court erred by failing to first determine whether Father was willing and able to provide A.S. with a safe family home before finding that an award of permanent custody was in A.S.'s best interest; and (4) Findings of Fact (**FOFs**) 41, 61, 74, and 116 are clearly erroneous and Conclusion of Law (**COL**) 12 is wrong.

---

[1]  The Honorable Linda S. Martell presided.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Father's points of error as follows:

(1) There was clear and convincing evidence that Father was not presently willing and able to provide A.S. with a safe family home, even with the assistance of a service plan. By the time the hearing on the permanent plan commenced, A.S. had been in foster custody for over two years. It is presumed that Father was under the influence of alcohol when he failed to submit to testing, as ordered by the Family Court, after appearing in court on June 24, 2010 smelling of alcohol. Increased visits are a required step in the reunification process of A.S. with Father. However, Father refused to increase his visitation with A.S. because he did not have time for more than one visit per week. Despite completing parenting classes, Father demonstrated that his behavior did not change and did not put A.S. before his own needs. For example, Father admitted that cigarette smoke was not good for A.S. (A.S. reportedly had respiratory difficulties as an infant), but his apartment smelled like cigarette smoke on the day that Father was to have an inhouse visit.

There was clear and convincing evidence that it was not reasonably foreseeable that Father would become willing and able to provide a safe family home, even with the assistance of a service plan, within a reasonable period of time. Father failed to complete individual psychotherapy and individual counseling as required by the March 2009 Service Plan. Father declined to participate in individual psychotherapy and individual counseling because he believed that he did not need it. Father refused to listen to feedback on parenting skills and became defensive when

2

different information was pointed out to him. Without significant changes, Father's parenting ability was at the same place when A.S. was first placed into foster custody. This demonstrated that Father's parenting ability was not likely to change in the foreseeable future to the extent that it would allow him to provide a safe family home, even with the assistance of a service plan.

(2) Contrary to Father's claim, DHS provided written service plans that he could understand. Father appeared to understand the September 2008 Service Plan because he completed all of the required services. The March 2009 Service Plan required that Father participate in individual psychotherapy and individual counseling. The March 2009 Service Plan did not require a higher level of understanding than the September 2008 Service Plan when it stated that Father should participate in additional services. Father apparently understood the March 2009 Service Plan when he contacted service providers regarding individual psychotherapy and individual counseling.

(3) The Family Court clearly first found that Father and Mother were not presently willing and able to provide a safe family home, even with the assistance of a service plan, and that they could not provide the child with a safe family home within a reasonable period of time, before it determined that the permanent plan was in the best interest of the child. Therefore, Father's claim that the Family Court did not determine that the permanent plan was in A.S.'s best interest before making a determination that Father could not provide a safe family home is without merit.

(4) FOF 41 is supported by Ivy Isagawa's testimony and, therefore, is not clearly erroneous.

3

Regarding FOF 61, the record does not contain any objections to Father's testimony as non-responsive. Nor did the State argue that Father's responses did not make sense. In addition, FOF 61 does not specify which responses were non-responsive or did not make sense, and its context is not apparent from other FOFs. FOF 61 is clearly erroneous. However, the Family Court's error is harmless because FOF 61 was not necessary for the court's finding that there was clear and convincing evidence that Father was not willing and able to provide a safe family home, even with the assistance of a service plan, and that it is not reasonably foreseeable that Father will become willing and able to provide a safe family home, even with the assistance of a service plan, within a reasonable period of time which shall not exceed two years from the date upon which the child was first placed under foster custody by the court.

Dina Koyanagi testified that she thought Father was not willing and able to provide A.S. with a safe family home, even with the assistance of a service plan. Therefore, FOF 74 is not clearly erroneous. DHS timely referred Father for individual counseling as required by the March 2009 Service Plan and, therefore, the Family Court did not clearly err in Finding of FOF 116. Both service plans were explained to Father and Father contacted a service provider but refused to participate in services.

COL 12 is not wrong. See paragraph (3) above.

4

NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER

For these reasons, the Family Court's July 19, 2010 Order Awarding Permanent Custody is affirmed.

DATED:  Honolulu, Hawai'i, August 31, 2011.

On the briefs:

Thomas A.K. Haia
for Father-Appellant

Jay K. Goss
Mary Anne Magnier
Deputy Attorneys General
for Appellee

Chief Judge

Associate Judge

Associate Judge

5